INDUSTRIAL CLUTCH COMPANY, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.

*November 10—December 8, 1942.*

*Harvey J. Frame* of Waukesha, for the appellant.

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

FOWLER, J.   The case involves the imposition of an additional income tax against the plaintiff by the Department of Taxation.   The plaintiff appealed the order of the department to the board of tax appeals, who confirmed the tax. The board of tax appeals will hereinafter be referred to as "the board" and the Department of Taxation as "the department."   The plaintiff then appealed the order of the board to the circuit court who affirmed the legal basis of the imposition of the tax, but held that the evidence before the department and the board did not establish the factual basis of it as found, and sent the case back to the board for further proceedings to determine that basis.

The company during the years for which the additional taxes were imposed was engaged in manufacturing clutches covered by patents or applications for patents which it held. The controversy arises from the depreciation deducted by the company in reporting its income for taxation purposes during the years from 1935 to 1938.   The property of the company consisted largely of patents issued or applied for which patents and applications had been assigned by the patentee to the com-

pany in payment for stock of the company issued to him. The term of a patent is seventeen years, and the company in making the deductions in its income tax reports went on the theory that at the end of the term the patents would be worthless and that it was entitled to deduct one seventeenth of the value of the patents each year. The deduction taken by the company was one seventeenth of $100,000, the par value of the stock the incorporators had agreed to issue to the patentee for his patents. The department makes no objection to the deduction of one seventeenth each year, but claims that the one seventeenth must be computed on the cost of the patents to the patentee, and found this value to be $700 and the board sustained the department's position. The circuit court held that the cost of the patents to the patentee in money, time, and work expended by him in their development and procurement was the proper basis for the amortization deduction but that that cost must have been far in excess of $700, and sent the case back to the board for the purpose of taking evidence and determining that cost and assessing the tax on the basis of that cost.

The federal board of tax appeals, in proceedings incident to assessing the federal income tax, allowed the company to deduct for amortization one seventeenth of $100,000 on the ground that the company had agreed to issue and had issued stock of that amount in payment for the patents. The department or the state was not a party to those proceedings and is not bound by the determination of the federal board. The right to tax depends on the statutes of the state. It is for the state to construe its own statutes and to make its own determination of the basis for amortization in imposing the state income tax.

The trial court was manifestly correct in holding that the finding of the department that $700 was the cost of the patents was without support in the evidence. It appears that there were three incorporators, Perkins, Eason, and the patentee.

Prior to the incorporation Perkins had contributed $3,750 and Eason $1,250 to the patentee for use in developing and procuring the patents. This shows that the cost to the patentee of developing and procuring the patents was necessarily more than $700. The amount of $700 was taken because that is the only sum appearing on the company's books as expended for procuring patents.

At the time of the incorporation it was agreed that the patentee would assign his patents and applications to the corporation and the corporation would issue to him therefor stock of the par value of $100,000; that Perkins would contribute $45,000 in cash and Eason $15,000. Each subscribed for stock accordingly. Perkins paid in $45,000 and Eason $7,500. Stock was issued on the basis of the subscriptions, but after manipulations due to advancements prior to incorporation and the release of Eason from payment of the other $7,500 of his subscription and other matters between the parties, the stock holdings of the parties were of stock of the par value: Patentee, $80,000; Perkins, $60,000; Eason, $12,500. No other stock was issued. It had been agreed between the parties originally that the patentee should have an interest in the business to be started for the manufacture and sale of the articles covered by the patents equal to the combined contributions of Perkins and Eason.

The statutes next below quoted, which for convenience of reference we will designate as (A), (B), and (C), form the basis of the ruling below that the cost to the patentee is the basis for determining depreciation due to amortization:

(A) Sec. 71.02 (2) (j) 2. "If property was acquired by a corporation by the issuance of its stock or securities in connection with a transaction described in section 71.02 (2) (i) 3 the basis shall be the same as it would be in the hands of the transferor. This paragraph shall be applicable only when the transaction involved was treated for income tax purposes as provided in section 71.02 (2) (i) 3."

(B) Sec. 71.02 (2) (i) 3. "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock received by each is substantially in proportion to his interest in the property prior to the exchange."

(C) Sec. 71.02 (2) (i) 8. "As used in this section the term 'control' means the ownership of at least eighty per cent of the voting stock and at least eighty per cent of the total number of shares of all other classes of stock of the corporation."

It appears to us from the statutes quoted that the ruling below was correct. (A) provides that it is applicable when property is acquired for issuance of the stock and the transaction whereby it was acquired was treated for income-tax purposes as provided by (B). By (B) there was no gain to any of the parties in the transaction involved on the issues of the stock; and the three parties after the exchange were in control of the corporation as control is defined in (C), and the stock received by each was substantially in proportion to his interest in the property prior to the exchange of stock for property. By the original agreement the patentee was to have an interest equal to the other two by reason of their cash contributions. Perkins and Eason in fact together wound up with forty-seven per cent plus of the stock, thirty-nine per cent plus eight per cent, and the patentee with fifty-three per cent plus. The three were in control immediately after the stock was issued because they had all of it and had eighty per cent of the stock authorized. The patentee was the "transferor" of the property and the basis of computing an income of the company under (A) is the same as the basis would be in computing such tax were the property in the hands of the transferor. In determining income tax were the property

in the transferor, the basis of computing depreciation due to amortization would be the cost of the patents, in money, time, and effort, as it is on that basis that his gain would be determined.

*By the Court.*—The judgment of the circuit court is affirmed.